UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20253-CR-BECERRA

UNITED STATES OF AMERICA,

   *Plaintiff,*

v.

ANGELICA PACHECO,

   *Defendant.*

_____/

## DEFENDANT'S MOTION TO DISMISS AND TO COMPEL DISCOVERY FOR SELECTIVE AND VINDICTIVE PROSECUTION

Born and raised in Hialeah, Angelica Pacheco has worn many hats throughout her life: daughter, mother, spouse, nurse, entrepreneur, councilwoman. It is her work in public service that is the subject of this motion. The healthcare conspiracy alleged in this case ended years before Ms. Pacheco became a councilwoman of the City of Hialeah. Yet her indictment did not issue until *after* she was elected to the Council in November 2023. (D.E. 3.) For the reasons stated below, Ms. Pacheco argues that this case reflects an unconstitutionally selective enforcement of the law, selective prosecution, and vindictive prosecution.

Ms. Pacheco, through undersigned counsel, moves this Court to dismiss the indictment because her prosecution violates the Fifth and Fourteenth Amendments to the United States Constitution. Ms. Pacheco also first moves to compel discovery relevant to the matters discussed herein, and she respectfully requests an evidentiary hearing on this motion.

## BACKGROUND

A. *The founding of Florida Life Recovery and Rehabilitation LLC.*

Angelica Pacheco has dedicated her life to serving others. To escape an abusive stepfather at home, she ran away at the age of 14 and married a man who ended up being abusive as well. She had four children by the time she was 19. Yet even at that young age, she worked endless nights to obtain her GED, and then to put herself through nursing school—which she had completed by the time her fourth child was born. At 21, to protect her children, she left her first husband. One month later, she met the man who would become her current husband, Daniel Pacheco. Ms. Pacheco then worked as a nurse throughout South Florida for many years; indeed, she later went back to school to become a registered nurse.

In 2017, Daniel Pacheco created Florida Life Recovery and Rehabilitation LLC ("Florida Life"), by registering with the Florida Department of State and investing a significant sum of money that he earned through his work in the music industry. Since August 2017, Mr. Pacheco has served as Florida Life's President, CEO, and Manager.[1]

Motivated by her experience as a nurse at a different substance-abuse clinic as well as her own daughter's struggle with addiction, Ms. Pacheco dedicated much of her time and energy to Florida Life. Since the creation of the business, however, her husband never assigned her an official corporate title within the organization, nor

---

[1] Another individual was briefly a part of Florida Life's corporate structure, but she was removed from the company by mid-2017.

2

did he grant her any equity stake in the business.  Regardless, when she was not busy meeting the demands of her growing family, Ms. Pacheco helped her husband's substance-abuse startup to the best of her abilities.

Like many residents of South Florida, Daniel Pacheco speaks only Spanish. Accordingly, Mr. Pacheco often delegated tasks to Ms. Pacheco when the moment called for a bilingual speaker.  Ms. Pacheco in turn often delegated responsibilities to Florida Life staff members whom she and her husband believed to be competent professionals.  One of those professionals was Dr. Jose Santeiro—the physician who served as Florida Life's medical director during much of the time of the alleged conspiracy in this case.  Another was the employee who served as both Director of Operations and Billing Manager at Florida Life.  He was primarily responsible for billing the insurers of Florida Life's patients for much of the same time period.

Florida Life was founded to help drug addicts survive and overcome their addictions.  Through her work at Florida Life, Ms. Pacheco was focused—first and foremost—on harm reduction. But kindness and compassion are not necessarily profitable.   And so,  despite  the Pachecos' best efforts, Florida Life struggled financially from its founding in 2017 through its dissolution.[2]  Florida Life never

---

[2] Florida Life operated at a much smaller scale than similar clinics, and it was much less profitable.  The related Compass Detox case, for example, involved loss amounts of more than seven times what is alleged here.  *See, e.g.*, Press Release, U.S. Dep't of Just., *Addiction Treatment Facility Operators Sentenced in $112 Million Addiction   Treatment   Fraud   Scheme*   (Mar.   21,   2022), https://www.justice.gov/archives/opa/pr/addiction-treatment-facility-operators-sentenced-112-million-addiction-treatment-fraud-scheme.

recovered after the pandemic, and it did not accept new patients after 2020.  By that time, Ms. Pacheco had turned to other personal pursuits, including her budding political career described below.

B.     *The investigation and prosecution of Dr. Jose Santeiro.*

Florida Life was not the only substance-abuse clinic to employ Dr. Santeiro as its medical director.  Dr. Santeiro simultaneously worked at several other South Florida clinics, including Compass Detox (an inpatient treatment facility) and WAR Network (a related outpatient treatment program), among others.  Both Compass and WAR were the subject of a multi-year, federal task force investigation that culminated in a series of high-profile fraud trials in 2021 and 2022.[3]

Florida Life was investigated by the federal task force at the same time those agents were targeting Compass and WAR.  Yet for reasons known only to the government, Dr. Santeiro was not charged for any of his conduct at Florida Life.  More importantly, despite the fact that Florida Life operated its alleged conspiracy during the same time period as the one in the Compass Detox case (2017 through 2020), neither Ms. Pacheco nor any other individual from Florida Life was indicted when

---

[3] *See* Press Release, U.S. Dep't of Just., *Addiction Treatment Facilities' Medical Director Sentenced in $112 Million Addiction Treatment Fraud Scheme* (July 7, 2022), https://www.justice.gov/archives/opa/pr/addiction-treatment-facilities-medical-director-sentenced-112-million-addiction-treatment.

It is worth noting that the government alleged during Dr. Santeiro's Compass trial that another of the clinics he worked for, Future Now Detox, was also engaged in fraudulent activity.  Yet the government has not charged anyone related to the operations of Future Now, which further adds to Ms. Pacheco's concerns regarding selective prosecution.

Dr. Santeiro was charged in early 2021 (in relation to his work at Compass and WAR).[4] Dr. Santeiro was ultimately convicted after trial and sentenced to 54 months in prison for his conduct at Compass and WAR.

### C.   *The election of Angelica Pacheco to Hialeah City Council.*

Ms. Pacheco has been a caretaker her entire life.  She cares deeply about the well-being of her family and the people in her community.  Two years after the founding of Florida Life, Ms. Pacheco sought a new way to uplift those around her: by pursuing a career in public service.  Throughout her time with Florida Life, Ms. Pacheco encountered obstacles with the City of Hialeah that she felt were unnecessary and unfair.  Thus, her run for office was initially inspired by a desire to improve conditions in the city for small businesses.  She sought change from the perspective of an everyday resident who was outside the political establishment.[5] And in many ways, Ms. Pacheco's political career mirrors her personal life—though starting from humble origins, she ultimately achieved her goals through tenacity and hard work.

---

[4] *United States v. Markowitz, et al.*, No. 21-cr-60020-WPD, DE 110 (S.D. Fla. Jan. 19, 2021).

[5] *See* Ladra, *Two candidates could block Luis Gonzalez comeback to Hialeah*, POLITICAL              CORTADITO              (Sept.              13,              2019), https://www.politicalcortadito.com/2019/09/13/two-luis-gonzalez-comeback-hialeah/ (reporting that Ms. Pacheco was "truly independent").

In November 2019, Ms. Pacheco campaigned for the first time for a seat on the Hialeah City Council.  Receiving only 15% of the vote, she lost in the primary election to Council Member Jesus Tundidor.[6]

Undeterred by her first loss, Ms. Pacheco ran again in November 2021.  She earned more than 29% of the vote during the primary election—the highest percentage of any candidate in her group—and therefore she proceeded into the general election.[7]  Two weeks later, she lost to Council Member Bryan Calvo.[8]

Ms. Pacheco then campaigned again, in a special election in November 2022 to fill the vacancy left on the Council after Hialeah Mayor Esteban Bovo's stepson resigned from the Council.  Ms. Pacheco is a registered Republican, and City Council elections in Hialeah are technically nonpartisan.  But Vivian Casals-Muñoz, who had been appointed to the council seat in the meantime, had been endorsed by many of local incumbent Republican leaders.[9]  Ms. Pacheco lost the election to Ms. Casals-Muñoz.[10]

---

[6] CITY OF HIALEAH, *2019 Primary Election – Official Results* (Nov. 8, 2019), https://www.hialeahfl.gov/ArchiveCenter/ViewFile/Item/372.

[7] CITY OF HIALEAH, *2021 Primary Election – Official Results* (Nov. 4, 2021), https://www.hialeahfl.gov/ArchiveCenter/ViewFile/Item/406.

[8] CITY OF HIALEAH, *2021 General Election – Official Results* (Nov. 19, 2021), https://www.hialeahfl.gov/ArchiveCenter/ViewFile/Item/430.

[9] *See, e.g.,* Vivian Casals-Munoz (@vivianhialeah), INSTAGRAM (Oct. 14, 2022), http://instagram.com/vivianhialeah.

[10] CITY OF HIALEAH, *2022 General Election – Official Results* (Nov. 18, 2022), https://www.hialeahfl.gov/ArchiveCenter/ViewFile/Item/432; *see also* Veronica Egui

But things changed in November 2023.  Campaigning on an anti-incumbent platform that promised to bring common-sense solutions to the affordability crisis plaguing Hialeah, this time the voters chose Ms. Pacheco.[11]  She narrowly defeated Council Member Vivian Casals-Muñoz—the candidate endorsed by Mayor Bovo and other prominent members of the Republican Party.[12]

D.      *The fight for affordable housing in Hialeah.*

Ms. Pacheco assumed office in November 2023.  She attended her first meeting of the Hialeah City Council on November 14, 2023, demonstrating at the outset that she was willing to break with her colleagues on any issue if her conscience compelled her to do so.  In her first vote as a Council Member, for example, Ms. Pacheco opposed the nomination of Council Member Tundidor for Council President because of a concern that the procedures for his nomination were conducted improperly.

Fighting for the interests of her constituents, Ms. Pacheco persistently illustrated her willingness to critically evaluate the policies advanced by the

---

Brito, *Vacancy left by councilwoman's arrest leaves Hialeah in a state of political uncertainty*, MIAMI HERALD (June 26, 2024) https://www.miamiherald.com/news/local/community/miami-dade/hialeah/article289492436.html ("Vivian Casals-Munoz was appointed as an intern council member on Feb. 8, 2022, and the election for that seat was held Nov. 8 of that year.").

[11] CITY OF HIALEAH, *2023 General Election – Official Results* (Nov. 13, 2023), https://www.hialeahfl.gov/ArchiveCenter/ViewFile/Item/495.

[12] Esteban Bovo (@teambovo), INSTAGRAM (Nov. 5, 2023), http://instagram.com/teambovo; Miami Young Republicans, *Announcing our City of Hialeah endorsements* (Oct. 12, 2023), https://www.miamiyoungrepublicans.com/post/announcing-our-city-of-hialeah-endorsements.

incumbent leaders in Hialeah.   For example, after the Council revealed the membership of its 13-person "affordable housing task force" led by Council President Tundidor, Ms. Pacheco criticized the inclusion of a particular real estate developer, Michael Wohl, on the task force because his company was previously the subject of a federal fraud investigation in connection with an affordable housing project.[13]

On December 12, 2023, during the City Council meeting in which Ms. Pacheco expressed her concerns regarding the Mr. Wohl's involvement with the affordable housing task force, Council President Tundidor and Mayor Bovo defended the developer at length.   Notably, Mr. Wohl had previously donated to the political campaigns of Council President Tundidor and Mayor Bovo.[14]

At that same Council meeting, Ms. Pacheco further questioned the propriety of including real estate developers known for building luxury high-rise condos (and lobbyists representing similar luxury developers) on the Council's affordable housing task force.[15]   Again, Council President Tundidor and Mayor Bovo—both having received donations from some of these same real estate developers—pushed back on any perceived impropriety by citing the need to seek advice from people who build things.   Thus, a disagreement among the Council began to crystallize within one

---

[13] *See* Veronica Egui Brito, *The challenge of achieving affordable housing in Hialeah: Political promise becomes expert committee*, EL NUEVO HERALD (Nov. 23, 2023) https://www.elnuevoherald.com/noticias/florida/hialeah/article282203308.html (original title translated into English).

[14] *Id.*

[15] *See* cityofhialeah, *City Council Meeting 12-12-23*, YOUTUBE (Dec. 12, 2023), https://www.youtube.com/watch?v=zlxZqcUhXyA&t=10428s, at 2:50:10.

month of her tenure: Ms. Pacheco demonstrated that she was not necessarily aligned with the interests of South Florida's major real estate developers.

Ms. Pacheco's split with the real estate developers widened one month later when the Council debated whether to ban the use of mobile homes as alternative housing option in Hialeah.[16]   In January 2024, Council President Tundidor sponsored, and Mayor Bovo publicly supported, a new ordinance that prohibited homeowners from renting out their RVs to would-be tenants.  Ms. Pacheco voted against the ordinance because she believed it would impose a substantial hardship on low-income residents who either needed an inexpensive place to live or relied upon rental income from their RVs to make ends meet.  Permitting these RVs to remain in Hialeah, in her view, served as one practical solution to the affordable housing crisis that she was elected to mitigate.  Nevertheless, the ordinance passed by a 4-2 vote and the menu of affordable housing options in Hialeah decreased.

By spring 2024, Ms. Pacheco perceived that her common-sense approach to governing—particularly in the context of land use and zoning—had alienated her from her colleagues at City Hall.  In an interview with *Political Cortadito*, Ms. Pacheco expressed frustration with Mayor Bovo because she believed him to be "determined not to let me pass any ordinance" whatsoever.[17]

---

[16] *See* Veronica Egui Brito, *Hialeah approves restrictions for RVs. Will it stop people from renting them as housing?*, MIAMI HERALD (Jan. 25, 2024), https://www. miamiherald.com/news/local/community/miamidade/hialeah/article284674401.html.

[17] Ladra, *Hialeah councilwoman scolds mayor on marijuana smoking in public measure*,          POLITICAL          CORTADITO          (Apr.          15,          2024),

At a City Council meeting held on April 9, 2024, Ms. Pacheco was given the surest sign yet that she was not welcome among her new colleagues. During a heated debate with the Mayor about whether public marijuana use should be further regulated, Ms. Pacheco noted aloud that she was the only Council Member elected "without a bunch of developers."[18] In response—and despite the fact that she had assumed office only five months prior to this meeting—Mayor Bovo warned her that "soon . . . perhaps the time for honoring yourself will come to an end quickly."[19] This warning, which Mayor Bovo paraphrased from the film *Gladiator*, was suspiciously prescient.

### E.   *The indictment and subsequent suspension from office.*

Between August 2020 (the end of the alleged conspiracy) and June 2024 (the filing of her indictment), there was one major change in Ms. Pacheco's life: her election to a seat on the Hialeah City Council. Unfortunately, her election and subsequent activities on the Council earned Ms. Pacheco several political enemies, including Mayor Bovo. These individuals had exceptionally close, personal ties to local political powerbrokers, including in local law enforcement and in high levels of the federal government, who had the power to investigate and prosecute Ms.

---

https://www.politicalcortadito.com/2024/04/15/hialeah-angelica-pacheco-esteban-bovo-marijuana-smoke/.

[18] *See* cityofhialeah, *City Council Meeting 4-9-2024*, YOUTUBE (Apr. 9, 2024), https://www.youtube.com/watch?v=fbKQxwNqOLc&t=9830s, at 2:43:35.

[19] *Id.* at 2:43:43.

Pacheco.[20]   And just weeks after Ms. Pacheco's main political adversary publicly warned her that "the time for honoring yourself will come to an end quickly," the indictment in this case was filed.

As a result of Ms. Pacheco's indictment and arrest, Governor Ron DeSantis suspended her from office on June 25, 2024—less than a week after the indictment became public.[21]   The Department of Justice also issued a press release about the case, highlighting that Ms. Pacheco was elected to the Hialeah City Council—despite that election occurring long after the alleged offense conduct.[22]   Councilwoman Melinda De La Vega was then appointed to fill the resulting vacancy on the Hialeah

---

[20] For example, just in the past few months, Mayor Bovo resigned from the office of Mayor and relocated to Washington, D.C. to work for a lobbying firm there. As he told the Miami Herald, "My wife has a position in the [Trump] administration, and I want to support her the same way she has supported me all this time."  Mayor Bovo's wife has worked for now-Secretary of State Mario Rubio for many years, and she recently moved with him to the State Department.  *See* Veronica Egui Brito, *Bovo leverages influence in Hialeah ahead of departure, gets retroactive pension benefits*, MIAMI            HERALD            (Mar.            25,            2025), https://www.miamiherald.com/news/local/community/miami-dade/hialeah/article302313289.html; *see also* Veronica Egui Brito, *Hialeah Mayor Esteban Bovo to step down, take job with lobbying firm in Washington*, MIAMI HERALD (Feb.    6,    2025),    https://www.miamiherald.com/news/local/community/miami-dade/hialeah/article298132808.html.

[21] Fla. Exec. Order No. 24-135 (June 25, 2024).

[22] *See* Press Release, U.S. Dep't of Just. *National Health Care Fraud Enforcement Action Results in 193 Defendants Charged and Over $2.75 Billion in False Claims* (June 27, 2024), https://www.justice.gov/usao-sdfl/pr/national-health-care-fraud-enforcement-action-results-193-defendants-charged-and-over.

City Council.  The Miami Herald reported that some other candidates had been "discouraged from applying for the vacancy under threat of mayoral veto."[23]

**ARGUMENT**

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law;" and the Fourteenth Amendment likewise guarantees that no person shall be denied "the equal protection of the laws."  U.S. CONST. amend. V, XIV.  Based on these provisions, Ms. Pacheco advances several arguments.  First, she moves to dismiss the indictment based on selective law enforcement and prosecution.  Second, she moves to dismiss the indictment based on vindictive prosecution.  And for both claims, she first moves to compel discovery to support her motions to dismiss.

Ms. Pacheco understands that she carries the evidentiary burden on these claims.  But she also recognizes that such claims, by their nature, require additional discovery not normally produced in the course of a criminal prosecution.  Thus, she first moves for discovery on these issues because she has put forward, even at this threshold stage, a "credible showing" of different treatment for similarly situated persons and of vindictiveness.  *United States v. Armstrong*, 517 U.S. 456, 470 (1996).  The Eleventh Circuit has described this preliminary showing as requiring the defense to establish a "colorable entitlement" of its claim, or "sufficient facts to take the

---

[23] Veronica Egui Brito, *Hialeah appoints interim councilwoman after Angelica Pacheco's arrest and suspension*, MIAMI HERALD (July 17, 2024), https://www.miamiherald.com/news/local/community/miamidade/hialeah/article290055689.html.

question past the frivolous state and raise a reasonable doubt as to the prosecutor's purpose." *United States v. Gordon*, 817 F.2d 1538, 1540 (11th Cir. 1987) (vacating conviction after finding that defendant was "entitled to discovery of the relevant Government documents" and "entitled to an evidentiary hearing on the selective prosecution claim so the full facts may be known," based on his threshold showing), *opinion vacated in part on reh'g as to other issues*, 836 F.2d 1312 (11th Cir. 1988).

A.   *Motion to dismiss for selective law enforcement and prosecution.*

The United States Attorney is the "representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, *but that justice shall be done*." *Berger v. United States*, 295 U.S. 78, 88 (1935) (emphasis added).  Prior to his tenure on the Supreme Court and his involvement in the prosecution of Nazi war criminals at Nuremberg, Justice Robert H. Jackson echoed this sentiment in an address to federal prosecutors:

> If the prosecutor is obliged to choose his cases, it follows that he can choose his defendants. Therein is the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted.

Robert H. Jackson, THE FEDERAL PROSECUTOR, 31 Am. Inst. Crim. L. & Criminology 3, 5 (1940-1941) (excerpt of speech delivered at the Second Annual Conference of United States Attorneys by then-Attorney General Robert H. Jackson, in Washington, D.C., Apr. 1, 1940).

It follows that the Department of Justice does not enjoy unfettered discretion to enforce our criminal laws because our Constitution constrains them. *United States v. Armstrong*, 517 U.S. 456, 464 (1996).   Accordingly, it is well-established that the Fifth and Fourteenth Amendments prohibit the discriminatory enforcement of criminal laws.  *Id.* at 464-65; *see also Wayte v. United States*, 470 U.S. 598, 608 (1985). "A defendant may demonstrate that the administration of the criminal law is 'directed so exclusively against a particular class of persons . . . with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." *Armstrong*, 517 U.S. at 464-65 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373 (1886)).

The decision to prosecute, like the decision to investigate or arrest, "may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong*, 517 U.S. at 464 (internal quotations omitted).  Therefore, to safeguard the guarantees of our Constitution, the Court must dismiss an indictment when it amounts to an equal protection violation—*i.e.*, when the defendant sufficiently shows that a federal investigation and/or prosecution had a "discriminatory effect" and was motivated by a "discriminatory purpose." *Id.* at 465 (discussing selective prosecution); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (discussing selective law enforcement).[24]

---

[24] Although sometimes conflated in the case law, selective prosecution and selective law enforcement claims are distinct.  *See United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017) (noting that in this context, "'[p]rosecution' refers to the actions of prosecutors (in their capacity as prosecutors) and 'enforcement' to the

To establish the "discriminatory effect" prong of the test, the defendant must show that similarly situated individuals were not prosecuted. *Armstrong*, 517 U.S. at 465; *United States v. Smith*, 231 F.3d 800, 811 (11th Cir. 2000) ("we define a 'similarly situated' person for selective prosecution purposes as one who engaged in the same type of conduct"). And to establish the "discriminatory purpose" prong, the defendant must show that an impermissible purpose was a motivating factor in the decision to enforce or prosecute a violation of the criminal laws. *See Hunter v. Underwood*, 471 U.S. 222, 225 (1985); *see also Smith*, 231 F.3d at 812 (discussing "legitimate" purposes for prosecution).

Here, Ms. Pacheco submits that her indictment violates the equal protection clause in two ways. First, similarly situated individuals—*e.g.*, Dr. Santeiro, Mr. Pacheco, the clinic's Director of Operations, any Florida Life employees responsible for billing, or any other staff or individuals involved in the alleged conspiracy—have not been prosecuted for their conduct at Florida Life. Second, her indictment was motivated by a desire to oppressively respond to the constitutionally protected statements that she made while campaigning for and serving on the Hialeah City Council.

Ms. Pacheco is the *only* person affiliated with Florida Life who has been charged in connection with the alleged operations of that enterprise. This is

---

actions of law enforcement and those affiliated with law-enforcement personnel."). Here, Ms. Pacheco is advancing both claims as a basis for her motion to dismiss.

remarkably unlike other recent Department of Justice prosecutions in the Southern District of Florida involving healthcare fraud at substance-abuse treatment centers, which all involve multiple defendants. *Compare* DE 3 (Ms. Pacheco's indictment) *with United States v. Markowitz, et al.*, No. 21-60020-CR-WPD, DE 110 (S.D. Fla. Jan. 19, 2021) (charging eight different defendants—including owners, executives, medical directors, and low-level employees—in connection with the operations of Compass and WAR); *United States v. Port, et al.*, 19-20583-CR-AHS, DE 126 (S.D. Fla. Jan 11, 2021) (charging four defendants in connection with the operations of Safe Haven Recovery, including owners, executives, the medical director, and a low-level employee); *United States v. Chatman et al.*, 17-80013-CR-DMM, DE 66 (S.D. Fla. Jan 24, 2017) (charging seven defendants, including the owner, part-owner, medical director, other doctors, nominee owners, and employees); *United States v. Snyder et al.*, 18-80111-CR-RLR, DE 46 (S.D. Fla. June 7, 2018) (charging four defendants, including the owner, CEO, and lower level employees); *United States v. Ahmed et al.*, 19-60200-CR-DMM, DE 1 (S.D. Fla. July 11, 2019) (charging four defendants, including co-owners, the CEO, and clinical directors).

Indeed, Dr. Santeiro was the medical director at Compass, WAR, *and* Florida Life (among other clinics), yet he was only charged for his conduct at Compass and WAR. [25]  He was not charged for anything concerning his time at Florida Life—even

---

[25] As previously noted, the government alleged during the Compass Detox trial that one of Dr. Santeiro's other clinics, Future Now, also engaged in a "similar health care fraud scheme[]" as Florida Life's alleged conspiracy, during the same time period but on a larger scale than Florida Life. *United States v. Markowitz, et al.*, No. 21-

though he was named in Ms. Pacheco's indictment as an alleged co-conspirator there. Moreover, unlike her husband Daniel Pacheco, Ms. Pacheco was never an officer of Florida Life and never possessed an equity stake in the business.  Further, based on information provided in discovery, the government is aware of a separate third-party fraud scheme that was perpetrated using Florida Life's NPI number, by someone who was entirely unrelated to the business.  Nevertheless, it was only Ms. Pacheco who was singled out for prosecution—not the owner of Florida Life, or the CEO, or any other employees or alleged conspirators.

Coincidentally, Ms. Pacheco is also the *only* person affiliated with Florida Life who campaigned for and was elected to a seat on the Hialeah City Council, on a platform that proactively sought to disentangle politics from monied interests—and to end other abuses of power.  And she is the same person who ruffled more than a few feathers while serving on that council.

Given the confluence of circumstances described above, Ms. Pacheco's prosecution seems to have been impermissibly motivated by a desire to punish her for exercising her right to free speech as both a private citizen and an elected official— rather than the legitimate desire to ensure that "justice shall be done."  *Berger*, 295 U.S. at 88; *see also Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (holding that retaliation for the exercise of free speech is an impermissible

---

60020-CR-WPD, DE 738, at 4 (S.D. Fla. July 1, 2022).  However, no one associated with that clinic's operations has been prosecuted for that conduct, despite allegedly engaging in "similar" fraud.

"motivating factor" in an equal protection analysis); *United States v. Folkers*, No. 04-20124-CR-KHV, 2007 WL 677703, at *5-6 (D. Kan. Feb. 28, 2007) (granting defendant's motion to compel discovery on selective prosecution, based on defendant's equal protection claim that he was prosecuted for his exercise of free speech).

      B.      *Motion to dismiss for vindictive prosecution.*

Generally, so long as the government has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute. *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006). The government's decision to prosecute violates the Fifth Amendment, however, when it exacts a price for the defendant's exercise of a clearly established right or it otherwise punishes the defendant for doing what the law plainly entitles her to do. *North Carolina v. Pearce*, 395 U.S. 711, 724 (1969); *United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort'") (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

This sort of prosecutorial misconduct is commonly referred to as vindictive prosecution because, by retaliating against the defendant's exercise of a legal right with a criminal indictment, the prosecutor has denied the defendant due process of law. *Blackledge v. Perry*, 417 U.S. 21, 31 n. 8 (1974) ("Our holding today . . . is not that Perry was denied due process by the length of the sentence imposed by the Superior Court, but rather by the very institution of the felony indictment against

18

him."). The Court must dismiss an indictment if the defendant sufficiently shows that the charging document was the result of "actual vindictiveness" or an otherwise unrebutted "presumption of vindictiveness." *See, e.g., Barner*, 441 F.3d at 1315-17; *United States v. Sanders*, 211 F.3d 711, 716-17 (2d Cir. 2000).

To establish actual vindictiveness, a defendant must prove that the prosecutor's charging decision was a "direct and unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal right." *Sanders*, 211 F.3d at 716-17 (quoting *Goodwin*, 457 U.S. at 380-84). Put differently, the defendant must show that "(1) the prosecutor harbored genuine animus toward the defendant, *or was prevailed upon to bring the charges by another with animus* such that the prosecutor could be considered a 'stalking horse,' and (2) the defendant would not have been prosecuted except for the animus." *Sanders*, 211 F.3d at 717 (emphasis added).

To establish a presumption of vindictiveness, the defendant must show that the circumstances of the case pose a "realistic likelihood" of such vindictiveness. *Blackledge*, 417 U.S. at 27. The circumstances must present a realistic likelihood that would be applicable in all cases. *Goodwin*, 457 U.S. at 381. And if the presumption of vindictiveness arises, it can be overcome by "objective evidence justifying the prosecutor's actions." *Id.* at 376 n.8.

Here, Ms. Pacheco submits that she has been denied due process because her indictment was sought in retaliation for the things she said and did while

19

campaigning for and serving on the Hialeah City Council. When Mayor Bovo warned her that "soon . . . the time for honoring yourself will come to an end quickly," it did.

Indeed, as a direct consequence of the indictment, Ms. Pacheco was suspended from office, which effectively silenced her ability to speak as an elected official and—through that speech—exercise the power of her office. The reality is that Ms. Pacheco's words threatened the bond between local incumbent politicians and the wealthy donors who fund their campaigns. And given the close connection between the Department of Justice and powerful members of the local political establishment, it appears that this indictment materialized because Ms. Pacheco picked a fight with the local political machine. The impetus of this prosecution was therefore retaliatory animus; it was vindictive. And the Fifth Amendment does not permit such prosecutions.

C.    _Motion to compel discovery relevant to the motions to dismiss._

Ms. Pacheco advances three claims in her motions to dismiss: selective law enforcement; selective prosecution; and vindictive prosecution. Because it is her burden to show the Court that these claims have merit, she first seeks discovery from the government and relevant non-parties so that she may meet that burden.

Insofar as her selective law enforcement and selective prosecution claims are concerned, Ms. Pacheco is entitled to discovery if she credibly puts forth "some evidence tending to show" that a given federal law enforcement or prosecutorial policy had a discriminatory effect and was motivated by a discriminatory purpose.

20

*Armstrong*, 517 U.S. at 468-70 (noting that the "some evidence" threshold is not intended to be "an insuperable task" for the defendant).  This evidence may be shown by direct or circumstantial evidence.  *See United States v. Brown*, 862 F. Supp. 2d 1276, 1288 n.20 (N.D. Ala. 2012), *aff'd*, 516 F. App'x 872 (11th Cir. 2013).  As noted above, the question is whether Ms. Pacheco has made a showing of a "colorable entitlement" to her claims.  *Gordon*, 817 F.2d at 1540.  Given the circumstances of this case, Ms. Pacheco respectfully submits that—at a minimum—she has met her burden to obtain discovery on her equal protection claims.

Unlike the owner of Florida Life, the medical director of Florida Life, the Director of Operations of Florida Life, all other employees of Florida Life, or anyone alleged to have committed fraud associated with Florida Life, Ms. Pacheco is the *only* person affiliated with that enterprise who is being prosecuted for its alleged operations.  This is a stark departure from the prosecutorial methods employed in similar and related healthcare fraud cases.  Accordingly, she has put forth "some evidence" tending to show that similarly situated individuals have not been prosecuted—*i.e.*, she has credibly shown evidence of a discriminatory effect.  And given her history on the Hialeah City Council, which has been documented by various news outlets, social media posts, recorded Council meetings, and an Executive Order signed by Governor DeSantis, Ms. Pacheco has sufficiently put forth evidence tending to show that her indictment was motivated by a discriminatory purpose.  Discovery should therefore be compelled.

21

With respect to her vindictive prosecution claim, the standard for discovery is essentially the same: Ms. Pacheco must put forth "some evidence tending to show the existence of the essential elements of the defense." *Sanders*, 211 F.3d at 717; *United States v. Simbaqueba Bonilla*, No. 07-20897-CR-PCH, 2010 WL 11627259, at *5 (S.D. Fla. May 20, 2010) (relying on *Sanders* in the discovery context).  In light of the foregoing discussion, Ms. Pacheco respectfully submits that she has met her burden to obtain discovery on her vindictive prosecution claim as well.

<u>CONCLUSION</u>

Because the Fifth and Fourteenth Amendments prohibit selective law enforcement, and selective and vindictive prosecutions, Ms. Pacheco respectfully asks the Court to dismiss the indictment against her.  She also requests discovery into the matters discussed above and a subsequent evidentiary hearing on this motion.

The government opposes this motion.

Respectfully Submitted,

HECTOR DOPICO
FEDERAL PUBLIC DEFENDER

By: */s/ Kate Mollison*
Kathleen Mollison
Assistant Federal Public Defender
Florida Special A No. A5502482
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: 305-530-7000
Email: kate_mollison@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **August 13, 2025**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Kate Mollison*
Kate Mollison