**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-CR-20253-JB**

**UNITED STATES OF AMERICA**

**v.**

**ANGELICA PACHECO**

**Defendant.**

_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO COMPEL DISCOVERY FOR SELECTIVE AND VINDICTIVE PROSECUTION**

The United States respectfully opposes Defendant Angelica PACHECO's Motion to Dismiss and to Compel Discovery for Selective and Vindictive Prosecution [the "Motion," DE 52].  Defendant's burden to support such allegations is heavy, and she fails to meet it.

The Government did not selectively prosecute PACHECO.  While she alone was charged, the Government is not constitutionally obligated to charge more than one person in a conspiracy.  This is particularly true since one of the similarly situated individuals Defendant cites, Dr. Jose Santeiro, was separately charged, convicted, and sentenced to 54 months' imprisonment in a different case. And there was no discriminatory purpose in charging her because she was a City Council Member; she was charged because as the Government alleges, she oversaw Florida Life and directed the criminal conduct that took place at this substance abuse treatment center.

Defendant fails to offer facts to support her assertions that the Indictment was brought to punish her for constitutionally protected statements she made while campaigning for and serving on the Hialeah City Council.  There was no cause-and-effect relationship between Defendant's political statements, campaign, or election to office, and her criminal indictment.  And Defendant does not cite a single statement that purportedly propelled the Government's decision to prosecute

her, nor a single fact that shows the Government was motivated in any way by Defendant's political career. The basic fact that defeats her claims is that the Government's investigation began well before she was elected to any office.[1] At bottom, all Defendant does is assert facts purporting to show that during her political career, she made enemies with other Hialeah officials including its mayor. PACHECO then describes a conspiracy involving these local municipal politicians, with purported connections to high profile federal political figures, who somehow collectively pressured the Department of Justice to indict her. This is baseless speculation.

As for vindictive prosecution, such claims are commonly made post-indictment when the severity of charges are increased in response to a defendant exercising their constitutional rights. Defendant stretches this definition to include pre-indictment statements she made as a politician as her protected right. And in any case, Defendant fails to offer credible evidence sufficient to even allege much less prove vindictive prosecution. The "facts" she cites in support—namely her disputes with Mayor Bovo and others [Motion at 5-10]—were not known by the Government. Vindictive prosecution claims are exceedingly difficult to successfully make, and here Defendant's claims are, charitably, not even close. Indeed, the presumption absent credible allegations of selective or vindictive prosecution is that the Government acted properly, and within its discretion, when it brought these charges, as it did here.

Finally, given the utter lack of any factual support for her Motion, no additional discovery is warranted, nor any pre-trial evidentiary hearing. Accordingly, Defendant's Motion should be resoundingly denied on the papers.

---

[1] In fact, the Government opened its criminal investigation into Defendant in 2018, a year before she first ran for office, and five (5) years before she was elected. And since Defendant claims in her Motion to Dismiss for Pre-Indictment Delay [DE 51 at 3] that the Government's investigation into her ended in October 2023—a month before she was elected to the Hialeah City Council— her prosecution simply could not have been pretextually motivated by her election to public office.

**FACTUAL AND PROCEDURAL BACKGROUND**

On June 18, 2024, a grand jury in the Southern District of Florida returned an 8-Count Indictment charging Defendant for her role in an approximately $19 million scheme to bill private insurance providers for substance abuse treatment services that were medically unnecessary, not provided, and not provided as billed by the Defendant's addiction treatment facility, Florida Life Recovery and Rehabilitation ("Florida Life"). Count One charges Defendant with conspiracy to commit health care fraud and wire fraud for a scheme which spanned from in or around July 2017 through in or around August 2020. Counts Two through Six charge Defendant with substantive health care fraud. Counts Seven through Eight charge Defendant with wire fraud in connection with a scheme to submit false and fraudulent applications for a Payment Protection Program ("PPP") loan and an Economic Injury Disaster Loan.

The Government will prove at trial that beginning in July 2017, PACHECO, who was herself a nurse, effectively owned and operated Florida Life, as she herself admitted to the FBI in a voluntary interview in 2020.[2] Florida Life purportedly provided several levels of outpatient therapy and other substance abuse treatment services to vulnerable patients seeking treatment for their addictions. But rather than provide meaningful substance abuse treatment therapy, PACHECO and her co-conspirators engaged in a conspiracy in which the therapy services were

---

[2] Prior to opening Florida Life, PACHECO worked at Safe Haven, a facility whose owner, Medical Director, and other individuals pled guilty in a different substance abuse treatment fraud case in this district. *United States v. Port, et al.*, 19-CR-20583-AHS. And PACHECO hired a Medical Director, Dr. Jose Santeiro, at Florida Life who was indicted and convicted at trial for his work at another facility, Compass Detox, LLC ("Compass")/We Are Recovery, LLC ("WAR), whose principals and others were also convicted at trial or pled guilty for similar conduct to that charged here. *United States v. Jonathan Markovich, et al.*, 21-CR-60020-WPD. The Government will show that Florida Life and PACHECO had reciprocal relationships with these other treatment centers, particularly Compass/WAR, through which patients were referred between and recycled by these facilities and Florida Life with repeated admissions to maximize billing.

3

not provided as billed, and were at times not even attended.  Further, the Government will show that patients were often over-medicated, sometimes to the point of sedation, by Dr. Santeiro, PACHECO, and other staff.   This kept patients docile and compliant to ensure that they would stay at Florida Life so it could continue to bill these patients' insurance. This practice of over-medication not only substantially inhibited vulnerable addiction patients' abilities to participate in their substance abuse treatment in a meaningful way as required to justify payment, but was, even more importantly, dangerous. In addition, excessive and unnecessary urinalysis tests were ordered for Florida Life's patients that were not properly used in treatment by PACHECO, Dr. Santeiro, nor other staff.  One reason this was done was in exchange for laboratory owners referring additional patients to PACHECO for treatment at Florida Life.

The Medical Director for Florida Life, Dr. Santeiro, was effectively an absentee doctor whose credentials and signature were used by PACHECO to authorize and justify all these fraudulent practices.  And the Government will prove PACHECHO directed and knew about all this fraudulent activity.  As a result of the fraud conspiracy alleged by the Government that was carried out by PACHECO and others, over $19.1 million was billed for which over $4.2 million was paid.  It is for this conduct and these reasons that PACHECO was charged, and not because she was a Council Member, nor for any statements she made in this role.

## LEGAL STANDARDS

"As a general rule, as long as the prosecutor has probable cause to believe the accused has committed a crime, the courts have no authority to interfere with a prosecutor's decision to prosecute." *United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006); *United States v. Lee*,

No. 23-13057, at *5 (11th Cir. Sep. 17, 2024) (quoting *Barner*).[3]   And commonly, "vindictive prosecution arises when the severity of the charges against a defendant is increased after the defendant exercises a constitutional right <u>after</u> criminal charges have begun," while selective prosecution or selective law enforcement "occurs when a person is prosecuted based on an immutable personal characteristic, such as race or religion, or in response to some constitutionally-protected act that a person has done <u>prior</u> to the criminal charge being brought against [her]." *United States v. Brown*, 862 F. Supp. 2d 1276, 1284-85 (N.D. Ala. 2012)(emphasis added).

### Selective Law Enforcement and Selective Prosecution

There is a presumption that a prosecutor's decision to prosecute is not based on a defendant's constitutionally-protected class. And as a result, a defendant challenging her prosecution on this ground must satisfy a "demanding" burden to establish that she was selectively prosecuted. *See Brantley*, 803 F.3d at 1271; *Smith*, 231 F.3d at 807.

A criminal defendant who claims she was subjected to selective prosecution must establish two elements: "(1) the discriminatory effect prong of this test requires a showing that 'similarly situated individuals were not prosecuted' and (2) '[t]he discriminatory purpose prong requires that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.'" *See Brantley*, 803 F.3d at 1271 (quoting *Smith*, 231 F.3d at 809; *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

---

[3] "The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution." *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000).  Not only are "prosecutors given broad discretion in deciding against whom to focus limited prosecutorial resources," but their decisions also carry a "strong 'presumption of regularity.'" *Id.* (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

To pursue a selective law enforcement claim, a defendant must show that her Fourteenth Amendment rights were violated because law enforcement's actions had a discriminatory effect or were undertaken with a discriminatory purpose. *See Armstrong*, 517 U.S. at 465 (stating under ordinary equal protection standards, a plaintiff must demonstrate both discriminatory effect and discriminatory purpose).

### Vindictive Prosecution

A claim of vindictive prosecution can only arise "when the severity of the charges against a defendant is increased after the defendant exercised a constitutional right after criminal charges have begun." *See Brown*, 862 F. Supp. 2d at 1284 – 85 (N.D. Ala. 2012). A prosecutor's decision to prosecute cannot be motivated by their desire to punish an individual "for doing something that the law plainly allow[s] him to do." *See United States v. Goodwin*, 457 U.S. 368, 384 (1982). Specifically, "one may not be punished for the exercise of a protected right." *See United States v. Mays*, 738 F.2d 1188, 1190 (11th Cir. 1984).

When a "prosecutor seeks heightened charges after a defendant successfully appeals his conviction for the same conduct," the Eleventh Circuit has found that a presumption of a vindictive motion may apply. *See United States v. Abbott*, No. 24-CR-20098-BLOOM/Elfenbein, 2025 LX 56144, at *18 (S.D. Fla. Feb. 22, 2025) (citing *United States v. Kendrick*, 682 F.3d 974, 981 (11th Cir. 2012)). However, "the prosecution may rebut the presumption by establishing reasons for adding the new charges other than to punish the defendant for exercising his legal rights." *See Kendrick*, 682 F.3d at 981. If the prosecution rebuts the presumption, "the burden rests on the defendant to demonstrate actual prosecutorial vindictiveness, which essentially requires a showing that the prosecution's justification is pretextual." *Id.*

Although the Eleventh Circuit has not definitively determined whether the presumption of vindictiveness can *ever* arise in the pretrial—must less pre-charge—context, that court did find that a presumption could arise in the pretrial context *only if* the facts of the case "form a realistic likelihood of vindictiveness." *See Barner*, 441 F.3d at 1318 (citing *Goodwin*, 457 U.S. at 383 – 84 Here, there is simply no evidence warranting a presumption in favor of Defendant's claims of vindictive prosecution.

When a defendant fails to establish that a presumption of vindictiveness applies, as here, the only way they could prevail is to show "actual vindictiveness." *See United States v. Sheppard*, No. 22-CR-20290, 2023 WL 7157874, at *15 (S.D. Fla. Oct. 31, 2023) ("[T]he Eleventh Circuit explained that where a presumption of vindictiveness does not apply, a defendant bears the burden of demonstrating actual vindictiveness" (citing *United States v. Watson*, 400 F. App'x 442, 445 (11th Cir. 2010)).  The Eleventh Circuit has held that to establish actual vindictiveness, a defendant "must show that the government's justification is pretextual." *See Jones*, 601 F.3d at 1261.  "[A] defendant may show 'actual vindictiveness' . . . [by] prov[ing] through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights." *See Lee*, No. 23-13057, at *10 (citing *Goodwin*, 457 U.S. at 380 – 81, 384 & n. 19).  "This showing is, of course, exceedingly difficult to make." *Id.*

## ARGUMENT

PACHECO fails to offer facts or law to support her claims of selective prosecution, selective law enforcement, and vindictive prosecution.  Indeed, a fair reading of Defendant's Motion is that she is effectively conflating selective prosecution or enforcement (she was indicted because she was a politician) with vindictive prosecution (she was charged because of pre-indictment statements she made).  And while she stretches the boundaries of the vindictive

prosecution doctrine, she cannot show the Government retaliated against her for any pre-indictment statements she made while in political office. Despite this, the Government responds to her claims in turn. However, it bears noting from the outset that PACHECO's claims, at face value, amount to an argument that any political figure who makes public statements wholly unrelated to the conduct charged may still claim selective and vindictive prosecution based on such statements if they have no co-conspirators named in their indictment; this cannot be permissible.

I.    **DEFENDANT FAILS TO SHOW A VALID CLAIM OF SELECTIVE PROSECUTION OR SELECTIVE LAW ENFORCEMENT**

**A. Defendant Does not Show That She Is Similarly Situated to Her Purported Comparators.**

Defendant is required to show by clear evidence that a similarly situated individual was not prosecuted for the crimes she was charged with committing. In the Eleventh Circuit:

> a "similarly situated" person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*See Brantley*, 803 F.3d at 1271 – 1272 (quoting *Smith*, 231 F.3d at 810). The Eleventh Circuit requires the Defendant to show that her comparators are "nearly identical" to her as the "court is not free to second-guess the prosecutor's exercise of charging discretion" except in an "exceedingly narrow number of cases." *See Brantley*, 803 F.3d at 1272.

In support of her selective prosecution claim, Defendant identified the medical director of Florida Life, Dr. Jose Santeiro, her husband, Daniel Pacheco, certain unnamed staff at Florida Life, and other unnamed individuals, as her comparators. But as to Dr. Santeiro, this comparison plainly defeats its purpose. Dr. Santeiro *was* prosecuted and convicted for his role in a conspiracy to commit health care fraud and wire fraud in a related addiction treatment case, and as a result,

8

charging him again in connection with Florida Life would provide only minimal deterrence, if any. *See United States v. Markovich et al,* 21-cr-60020-WPD (S.D. Fla. Jul. 13, 2022) [DE 758]. Further, Santeiro's conduct at Florida Life came up at his sentencing hearing after he was convicted at trial, and was presumably factored into his sentence. And there are significant differences between Defendant and the remainder of her comparators.

For example, regarding Mr. Pacheco, as evidenced by documents Defendant has entered into the record, Defendant, and not Mr. Pacheco, had the primary responsibility for running the day-to-day operations at Florida Life. (Sealed Ex. to Mot. to Dismiss for Preindictment Delay). As Defendant concedes, Mr. Pacheco is Spanish-speaking, whereas Defendant speaks both Spanish and English, and as result, Defendant was responsible for running the show at Florida Life. (Mot. at 3). The patient files and patient communications Defendant offered as exhibits in support of her Motion to Dismiss for Pre-Indictment Delay are entirely in English—a language that Defendant, but not Mr. Pacheco speaks. Additional discovery collected by the Government in this case further shows that it was Defendant, and not Mr. Pacheco, who ran the show at Florida Life. The strength of the evidence in this case supported charging Defendant, but not Mr. Pacheco.

Defendant does not identify the remaining staff and individuals at Florida Life who she claims are comparators, and as a result, fails to provide a factual basis to show that they were similarly situated to her. Accordingly, Defendant's claim of selective prosecution fails because she has not established that she and her co-comparators are similarly situated.

**B. Defendant Does not Show That the Decision to Prosecute Her Was Based Upon Any Constitutionally Impermissible Standard.**

Defendant similarly fails to establish that the Government's decision to prosecute her, but not her comparators, was based on an unjustifiable standard such as race, religion, or another arbitrary classification. *See Armstrong*, 517 U.S. at 464 (1996); *Brantley*, 803 F.3d at 1271.

Defendant appears to assert that the impermissible "arbitrary classification" was her exercise of her First Amendment right to "free speech as both a private citizen and an elected official." This assertion has no merit. Defendant offers no facts to show that the Government prosecuted for exercising her right to free speech. Further, the Government is permitted to select a defendant for prosecution "based in part upon the potential deterrent effect on others" that "serves a legitimate interest in promoting more general compliance with the [] laws." *See Brantley*, 803 F.3d at 1274 (quoting *United States v. Catlett*, 584 F.2d at 868). A prosecutor does not violate the Constitution by considering the potential deterrent effect of a particular case's prosecution. *See Armstrong*, 517 U.S. at 465 ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."); *see also Brantley*, 803 F.3d at 1273 – 1274. Defendant thus fails to show that the Government's decision to prosecute her was based on any constitutionally impermissible standard.

### C. Defendant Has Not Show That Law Enforcement Violated Her Equal Protection Rights.

Defendant does not allege any facts to support a claim that law enforcement violated her equal protection rights. She does not identify: (1) any similarly situated individual of a different protected class who was treated differently by law enforcement than she was under similar circumstances; or (2) any basis for inferring law enforcement investigation was motivated by a discriminatory purpose, as opposed to a thorough investigation that provided probable cause to show that Defendant had committed the crimes charged in the Indictment. The Motion cites no facts that shed light on law enforcement's investigation of Defendant as a member of a protected class, or how that compares to law enforcement's investigation of individuals who are not

members of Defendant's protected class.  Because Defendant has made only the conclusory assertion that law enforcement violated her equal protection rights, she has failed to state a claim.

## II.   DEFENDANT FAILS TO SHOW VINDICTIVE PROSECUTION

### A.  No Presumption of Vindictiveness Applies In This Case.

The presumption of prosecutorial vindictiveness is only triggered by the exercise of a protected *pre-trial* right.  Defendant's decision to seek public office on the Hialeah City Council, and any statements made in pursuit of that office, are not protected *pre-trial* rights that can provide a basis for the Court to find a presumption of vindictiveness.  Her decision to run for public office was made before she was charged, and consequently, afforded certain pre-trial rights.  As discussed below, the Eleventh Circuit has only considered whether the presumption of vindictiveness applies in cases where the prosecutors superseded their initial charges after the defendant exercised a pre-trial right.  This case does not present analogous facts as the Government has not sought a superseding indictment.  But even if the Court were to find that her decision to seek public office was a protected right that warranted a presumption of vindictiveness, the Government can rebut that presumption by pointing to facts showing that the Defendant was charged for reasons wholly unrelated to her political pursuits.

First, the Government opened its criminal investigation into Defendant in approximately November 2018, a year before Defendant first campaigned for office on the Hialeah City Council and five years before she was elected. (Mot. at 6).  Second, the Government has brought charges equally or even more severe than those Defendant is facing here, against owners and operators of addiction treatment facilities who never campaigned for or were elected to any public office. *See United States v. Markovich, et al.*, No. 21-cr-60020-WPD (S.D. Fla. Jan. 19, 2021); *United States v. Port, et al.*, 19-cr-20583-AHS (S.D. Fla. Sep. 12, 2019).  Third, the Government prosecutors in this case have no ties or loyalty to local political officials in Hialeah, or elsewhere in Florida.

Fourth, the local political officials that Defendant cites in her Motion had no influence on the Government's decision to charge Defendant—as Defendant appears to suggest. (Mot. at 6 - 11). Fifth, the Government had no communications with those local political officials about Defendant prior to charging her. And finally, even though the Government has produced voluminous discovery in this case, Defendant cannot point to a single piece of evidence that shows any causal relationship between the Government's charging decisions and the Defendant's political career.

Further, Defendant is unable to cite any case law showing that any court in the Eleventh Circuit has ever found that a presumption of vindictiveness applies to a prosecutor's charging decisions or that actual prejudice can be established based on a prosecutor's charging decisions.[4] Instead, Defendant argues in a brief and conclusory manner that a presumption of vindictiveness applies to the Government's charging decisions because "her indictment was sought in retaliation for the things she said and did while campaigning for and serving on the Hialeah City Council." (Mot. at 19 – 20). This circular argument is bereft of any factual support and therefore fails.

PACHECO asks this Court to apply a Second Circuit test to determine whether she has shown actual vindictiveness in the Government's charging decisions. [Mot. at 19, citing *Sanders*, 211 F.3d at 717]. No court within the Eleventh Circuit has ever applied this test to assess actual vindictiveness, as shown by Defendant's inability to cite a single Eleventh Circuit case in support. This Court should not take the extraordinary step of applying it here. The appropriate test that the Court should apply is provided in the Eleventh Circuit case law discussed above. *See Jones*, 601

---

[4] PACHECO cites one case, outside of the Eleventh Circuit, to show that actual prejudice can be established to show vindictive prosecution based on a prosecutor's charging decisions. [Mot. at 19 citing *United States v. Sanders*, 211 F.3d 711, 716 – 17 (2d Cir. 2000)]. However, even in the case Defendant cites, that court states that "a prosecutor's pretrial charging decision is presumed legitimate." *Id.* at 716.

F.3d at 1261; *Watson*, 400 F. App'x at 445; *Barner*, 441 F.3d at 1314 – 1318.  Accordingly, the Court should find that no presumption of vindictiveness applies here.

### B.  Defendant Has Not Offered Any Evidence Showing Actual Prejudice.

As discussed above, the Eleventh Circuit appears to have only considered the question of actual vindictiveness where a prosecutor has brought superseding charges after the defendant exercised a legal right.  That is not the case here.  But even if the Court finds that it should consider the question of actual vindictiveness in this case, the Court should deny the Motion because Defendant cannot show that the Government's proffered reasons for prosecuting her are pretextual.  Defendant has offered no evidence of collaboration between the Government and the Hialeah City Council, and no objective evidence that the Government charged her as punishment for exercising her legal rights.

Defendant argues that she was denied due process because "her indictment was sought in retaliation for the things she said and did while campaigning for and serving on the Hialeah City Council."  [Mot. at 19 – 20].  To illuminate this point, Defendant then states that when the mayor of Hialeah, Mayor Esteban Bovo, told her that "'soon . . . the time for honoring yourself will come to an end quickly,' it did."  [Mot. at 20].  The Government does know of any political or personal animosity between PACHECO and Mayor Bovo, other than what is presented in her Motion.  However, what is clear is that any animus that Mayor Bovo may have directed toward Defendant, had no bearing whatsoever on any charging decision made by the Government.  Defendant is unable to cite any evidence that shows that the Government acted on, or shared any animus that Mayor Bovo may have had, in its decision to indict her.  She thus provides no causal connection.

Defendant also argues that as a direct consequence of the Indictment, she was suspended from serving on the Hialeah City Council.  To support this argument, Defendant makes the unfounded

claim that "given the close connection between the Department of Justice and powerful members of the local political establishment, it appears that this indictment materialized because Ms. Pacheco picked a fight with the local political machine." [Mot. at 20]. It is unclear how Defendant has reached the conclusion that there was a close connection between the Department of Justice and the local political establishment in Hialeah in June 2024 when she was charged. It is even more unclear how the Defendant has determined that this purported connection caused the Indictment against her. And PACHECO fails to cite any evidence or action taken by the Government that her interactions with local politicians caused the Government to charge her, as she is required to do.[5]

## III. DEFENDANT IS NOT ENTITLED TO DISCOVERY NOR AN EVIDENTIARY HEARING

In order to obtain discovery, PACHECO is required to provide "some evidence tending to show" her indictment was motivated by a discriminatory purpose or that it had a discriminatory effect, *Armstrong*, 517 U.S. at 468-70, or that the Government's charging decisions was motivated by her exercise of a pre-trial right that caused "actual prejudice" to her ability to prepare a defense

---

[5] The Government acknowledges that Florida Governor Ron DeSantis suspended Defendant from serving as a member of the Hialeah City Council because of the Indictment. [Mot. at 20]. However, Defendant offers no evidence, and does not even allege, that she was indicted so that she would be suspended and/or removed from office. And the power to suspend indicted elected municipal officials in the State of Florida rests solely with the governor and the governor is obligated to restore those officials to public office with backpay if they are not convicted on the charges. Pursuant to Florida Statute 112.51(2), the governor has the "power to suspend" an elected municipal official who has been indicted for committing a federal or state felony. Fla. Stat. 112.51(2). If the municipal official is acquitted, found not guilty, or is otherwise cleared of the charges, then the governor "shall forthwith revoke the suspension and restore such municipal official to office" and the official "shall be entitled of full back pay." Fla. Stat. 112.51(6). On June 25, 2024, Florida Governor Ron DeSantis issued an executive order suspending Defendant from serving on the Hialeah City Council due to her charges in this case. Between 2019 and 2024, Governor DeSantis also issued executive orders suspending three (3) other public officials who were indicted on felony charges.

at trial, *see Mays*, 738 F.2d at 1190.   Additionally, "in order to obtain an evidentiary hearing on a selective prosecution claim, 'the defendant must present facts sufficient to create a reasonable doubt about the constitutionality of a prosecution.'"   *See Brantley*, 803 F.3d at 1271 (quoting *United States v. Silien*, 825 F.2d 320, 322 (11th Cir. 1987)).[6]

But Defendant fails to present enough facts to meet these required thresholds.  She provides virtually no evidence other than wild speculation that her indictment was motivated by a discriminatory purpose, and her Motion raises no doubt about the constitutionality of the Government's prosecution.  The Court should therefore deny her request for discovery and an evidentiary hearing.

---

[6] Indeed, to obtain discovery in support of a vindictive prosecution claim, PACHECO is required to provide evidence showing that the Government charged her *after* and *because* she exercised a *pre-trial right*. *See Barner*, 441 F.3d at 1317; *Mays*, 738 F.2d at 1190.  PACHECO is factually unable to show she exercised any pre-trial right before she was charged in this case, as she is required to do to provide a basis for a vindictive prosecution claim.  Such a claim would be non-sensical, of course, and PACHECO makes no attempt at making such a claim.  Instead, she confuses the law by arguing that a claim of vindictive prosecution is available for her to challenge the Government's initial charging decision.  It simply is not.  PACHECO ultimately fails to provide any evidence showing that she ever exercised a pre-trial right, let alone was punished for it through the Government's decision to indict her.  Therefore, no discovery nor an evidentiary hearing is warranted.

**CONCLUSION**

Because Defendant has not shown any evidence of selective prosecution or law enforcement, or prosecutorial vindictiveness—presumed or actual—the Court should deny her Motion to Dismiss and to Compel Discovery for Selective and Vindictive Prosecution in its entirety, and without an evidentiary hearing nor additional discovery.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

LORINDA LARYEA, ACTING CHIEF
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION, FRAUD SECTION

By:     /s/ James V. Hayes
        James V. Hayes, Assistant Chief
        Florida Special Bar No. A5501717
        Aisha Schafer Hylton, Trial Attorney
        Florida Special Bar No. A5503133
        United States Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue NW
        Washington, D.C. 20005
        James.Hayes@usdoj.gov
        Aisha.schafer.hylton@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 27, 2025, I served and filed the forgoing document with the Clerk of the Court via ECF.

By:     /s/ James V. Hayes
        Trial Attorney

16